**BROWN & ROOT DEVELOPMENT, INC., Plaintiff-Appellee,**

v.

**TENNESSEE VALLEY AUTHORITY, Defendant-Appellant.**

No. 81-7390.

United States Court of Appeals, Eleventh Circuit.

Aug. 2, 1982.

Herbert S. Sanger, Jr., Gen. Counsel, Justin M. Schwamm, Sr., Charles W. Van Beke, Assts. Gen. Counsel, Brent R. Marquand, Alvin M. Cohen, Knoxville, Tenn., for defendant-appellant Tennessee Valley Authority.

Speake, Speake & Reich, J. G. Speake, Moulton, Ala., Powell, Wilson, Brown & Maverick, William A. Brown, Harry M. Thomson, Jr., Houston, Tex., for plaintiff-appellee.

Before MORGAN, KRAVITCH and HENDERSON, Circuit Judges.

KRAVITCH, Circuit Judge:

The Tennessee Valley Authority [TVA] appeals from an order of the district court assuming jurisdiction under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601 et seq., of this contract dispute between TVA and appellee Brown & Root Development, Inc. [Brown & Root]. At issue is the validity of a TVA regulation requiring contractors who have the option of choosing to resolve disputes either under the "disputes" clause of their contracts or under the new Disputes Act to inform the TVA of that choice in writing at the initial submission of a claim. For the reasons stated below, we reverse the trial court.

I.

In 1978 Congress reformed the entire procedure for settlement of contract disputes between private contractors and agencies of the federal government by passing the Contract Disputes Act of 1978, Pub.L. No. 95–563, 41 U.S.C. §§ 601 et seq. Prior to the new Act, a contract dispute was resolved under the "disputes" clause of a contract. The usual disputes clause required a contractor to first submit a claim to the agency's Contracting Officer in charge of the contract; if the decision was adverse, the contractor could take an administrative appeal[1], then file for review in federal court. This court review, however, was limited to determining whether the final decision was arbitrary or capricious, in bad faith, or not supported by substantial evidence.

The new Act significantly changed this procedure by permitting a contractor, after receiving the decision of the contracting officer, to choose whether to prosecute an administrative appeal to the agency's Board of Contract Appeals or to file an action in

---

1. In the case of the contract at issue here, the appeal was to TVA's general manager.

federal court[2] for de novo review of the contract claim. The new Act also required claims to be certified, and as a financial incentive to settle claims, made the contractor liable for any misrepresented or fraudulent claims and costs and the government liable for prejudgment interest on valid claims. This was a significant departure from the former disputes clause claim procedure, since many government contracts contained a "no interest" clause and no penalties attached to a contractor's filing an inflated claim in the hope of a favorable compromise decision.

By its terms the Act automatically applies to any contract entered into 120 days after the date of enactment.[3] Section 16 of the Act, however, permits contractors who had contracts entered into prior to the effective date to elect to proceed under the Act for any claim pending before a contracting officer at the effective date or initiated thereafter. The Act did not specify when or how this election was to be made, but in regulations passed to implement the Act, the TVA required that a contractor wishing to proceed under the new law must inform the TVA of that choice in writing. For contractors with claims pending on the effective date, the regulations required that a contractor give this written notice to the TVA within 30 days of the contractor's receipt of the contracting officer's decision. 18 C.F.R. § 1308.4(b). For claims initiated after the effective date, the contractor had to include the notice in the document first requesting a decision by the contracting officer. *Id.*

Brown & Root submitted a claim on a pre-Act contract to the TVA on August 16, 1979, approximately five and one-half months after the Act's effective date and two and one-half months after publication of TVA's implementing regulations. The claim did not contain the election notice required by TVA regulations. Nevertheless, after the contracting officer issued an unfavorable decision on its claim, Brown & Root instituted an action for de novo review in federal court as permitted by the Act and moved for a protective order prohibiting TVA from processing Brown & Root's claim under the disputes clause of the contract.[4] The court, holding TVA's election regulation invalid, assumed jurisdiction of Brown & Root's claim under the Act and entered the requested order. TVA then requested certification for an interlocutory appeal under 28 U.S.C. § 1292(a)(1). The district court granted certification which this court accepted.

## II.

In *Patton Wrecking & Demolition Co. v. TVA*, 465 F.2d 1073 (5th Cir. 1972), the former Fifth Circuit[5] held that a district court may not entertain an action on a contract dispute between a private contractor and a government agency until the contractor has exhausted the administrative remedies available under the contract's disputes clause. Thus unless the Disputes Act, which specifically provides for actions in federal court without administrative exhaustion, applies to Brown & Root's claim, the district court improperly assumed jurisdiction in this case. The TVA asserts that

---

**2.** These suits must be brought in the Court of Claims except for suits against the TVA, which may be brought in federal district court pursuant to 28 U.S.C. § 1337. 41 U.S.C. § 609(a).

**3.** The Act was passed November 1, 1978, making the effective date March 1, 1979.

**4.** After the unfavorable action by the contracting officer, Brown & Root mailed TVA a letter on February 20, 1980, advising TVA that it intended to "exercise our right to further contest the issues involved by resort to one of the available procedural remedies available to us .... The Contract Disputes Act of 1978 expounds the alternative avenues of review and

we are evaluating those alternatives at this time." The TVA responded to this letter on March 7, 1980, informing Brown & Root that it had failed to make the appropriate election under TVA regulations to process its claim under the Act, and that TVA would treat the February 20 letter as a notice of appeal under the contract disputes clause.

**5.** The Eleventh Circuit, in the en banc case *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), adopted as precedent decisions rendered by the former Fifth Circuit prior to October 1, 1981.

the Act does not apply to Brown & Root's claim because the contractor waived his right to proceed under the Act by failing to include the written election notice when it submitted its claim to the contracting officer in accordance with TVA regulations. Brown & Root contends that the election regulation is invalid because it is arbitrary, unreasonable, and contrary to both the purpose and language of the Act.[6]

We disagree with Brown & Root's contentions. Few principles of law are as well-settled as the proposition that regulations of a government agency must be upheld if in accord with law and not unreasonable. 5 U.S.C. § 706 (court may set aside agency action only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."); *National Muffler Dealers Ass'n v. United States*, 440 U.S. 472, 476, 99 S.Ct. 1304, 1306, 59 L.Ed.2d 519 (1979) (interpretive rules); *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519, 543–44, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978) (procedural rules); *American Hospital Management Corp. v. Harris*, 638 F.2d 1208, 1212 (9th Cir. 1981); *Randolph-Sheppard Vendors of America, Inc. v. Harris*, 628 F.2d 1364, 1366 (D.C.Cir.1980); *Arkansas Pharmacists Ass'n v. Harris*, 627 F.2d 867, 870 (8th Cir. 1980); *Board of Education v. Harris*, 622 F.2d 599, 613 (2d Cir. 1979), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981); *Cheers v. Secretary*, 610 F.2d 463, 466 (7th Cir. 1979), *cert. denied*, 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980); *Anderson v. Commissioner*, 446 F.2d 672, 674 (5th Cir. 1971). We find nothing arbitrary or unreasonable about the TVA regulation in question. As the TVA notes, the procedures for processing claims under the new Act are quite different from the pre-Act disputes clause procedures, and it is reasonable for TVA to want to know at the initiation of a claim which procedures govern. For example, under the new law a contracting officer must render a decision on a claim within 60 days. The disputes clause procedure contains no such limit. The volume of claims which must be processed by an agency such as the TVA[7] demands that the TVA be able to "flag" those claims requiring priority treatment. Second, under the new Act the government is liable for prejudgment interest. This potential liability might require TVA to give priority treatment to large claims brought under the new law to minimize the interest exposure. Furthermore, the pre-judgment interest liability could affect TVA's decisions to settle claims without litigation.

Brown & Root's counter-argument is not persuasive. It asserts that none of the procedural differences *compel* notification of the § 16 election when the claim is first submitted to the contracting officer. In fact, argues Brown & Root, the TVA regulations give contractors with claims *pending* at the Act's effective date thirty days after the contracting officer's decision to make their election, proving the TVA does not need to know the election decision at the outset. This argument misses the point: the regulation need not have a compelling basis to be sustained, only a reasonable one. The difference in treatment between claims pending on the Act's effective date and those initiated afterward is justified by the self-evident fact that claims submitted prior to the effective date of the Act could not have contained the election, since the election right did not exist. The regulation pertaining to pending claims is an accommodation to the statutory directive that those contractors with pending claims also have an election right. Merely because the TVA has made this accommodation does not make unreasonable the different treatment of other claims. Perhaps, as appellees argue, not requiring an election until thirty days after the contracting officer's decision for all claims would not significantly harm TVA's interests. The fact that other meth-

---

**6.** Brown & Root does not contest the authority of the TVA to issue these implementing regulations.

**7.** At oral argument counsel for TVA noted that some 1300 pre-Act contracts exist which could potentially produce claims for resolution by some disputes procedure.

ods of handling the election might also be reasonable, or even preferable, however, does not warrant our overturning a regulation which itself has a reasonable basis. The court's role is not to substitute its judgment as to the best rule for that of the agency. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 401, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Arkansas Pharmacists, supra,* 627 F.2d at 870.

Nor do we find the regulation contrary to the Act. Brown & Root makes two arguments concerning the alleged conflict between the TVA regulation and the statutory language. First, it argues that the regulation restricts its right to file for de novo review of its claim in district court contrary to the language of § 10(a)(2) of the Act, 41 U.S.C. § 609(a)(2), which states that the right of de novo review shall not be subject to any "contract provisions, regulation, or rule of law to the contrary." This argument is misdirected for several reasons. First, the language only applies to claims filed *under the Act*—the applicability of § 10(a) is predicated on a previous election by the contractor to proceed under the new law and not the contract disputes clause. *See Tuttle/White Constructors, Inc. v. United States,* 656 F.2d 644, 647 (Ct.Cl.1981) (Act requires initial election to proceed under its terms prior to election of forum; absent election to come under Act, contract disputes clause controls). The statute does not specify when or how this first election is to be made. Second, the legislative history and purpose of the Act indicates that the language in § 10(a) was designed to insure that the right of de novo review under the Act was not restricted by agency rules or contract provisions requiring exhaustion of administrative remedies or limiting court review to the "substantial evidence" test as had occurred under pre-Act law. *See* S.Rep. No. 95–1118, 95th Cong., 2d Sess. 11–14 (1978) *reprinted in* [1978] U.S.Code Cong. & Ad.News 5235, 5245–48. The language, therefore, has nothing to do with the contractor's election to avail himself of the new law. Finally, the TVA regulation does not in any way restrict the right to de novo review under § 10(a). The contractor may fully exercise any remedy in the new law as long as he tells the TVA, at the submission of his claim, that he intends to do so.

Brown & Root's second argument, related to the first, is that the only limitations on electing various remedies in the Act are the requirements that any administrative appeal be taken within 90 days of the contracting officer's decision and that a suit for de novo review be filed within one year of the decision. Again, this argument is misdirected. As with § 10(a), the time limitations cited by Brown & Root apply to claims brought under the Act; they are effective only after the contractor has chosen to proceed under the new law. The TVA regulation does not alter these time limits, nor does it require the contractor to make its choice of forums *under the Act* sooner than the law mandates. Once the contractor has properly elected to resolve his claim under the Act, then and only then do the provisions of the Act apply.

Finally, Brown & Root urges that the TVA regulation runs counter to the remedial purpose of the Act. According to appellee, the primary purpose of the Act was to provide a contractor with an escape from the "harsh, arbitrary, and capricious" actions of hearing officers under prior law and provide the contractor with a neutral forum for a fair and equitable resolution of claims. Accordingly, Brown & Root urges that it is contrary to the Act's purpose to have it forfeit its day in court through a failure to adhere to an "obscure" regulation. The regulation, however, was passed in accordance with the procedures required by law and duly published. It is no more obscure than thousands of regulations issued by other government agencies and appellee is charged by law with knowledge of it. *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). The regulation, moreover, is in no way inconsistent with the remedial purposes of the Act; it was appellee's failure to observe the regulation, not the regulation itself, which caused Brown & Root its loss of its day in court. This result is no more unfair than a plaintiff losing his right

to a court action by permitting the statute of limitations to run. Consequently, we find no inconsistency between the statute and the TVA regulation.

We have reviewed the cases cited by appellee and find them wholly consistent with our reasoning here. These cases do not involve any regulations on the election procedure, and as we noted above, the fact that other agencies or boards may permit a § 16 election at a later point does not alter the fact that a reasonable basis exists for the TVA's desire to know the election from the beginning. As the Court of Claims has recognized, to permit a contractor "to keep its options open" indefinitely would permit them "unilaterally to establish their own rules of procedure in cases covered by the Act." *Tuttle/White Constructors, Inc. v. United States, supra,* 656 F.2d at 648. The regulation at issue here is a reasonable method of avoiding such a problem. Accordingly, we reverse the order of the district court assuming jurisdiction in this case and remand with directions to dismiss this action.[8]

REVERSED.

---

8. TVA also asserted that Brown & Root's claim could not be processed under the new Act because the claim was not certified as required by 41 U.S.C. § 605(c)(1). Because we find that Brown & Root's failure to comply with TVA's election regulation mandates reversal and dismissal of this case, we do not reach the certification issue. *Cf., Paul E. Lehman, Inc. v. United States,* 673 F.2d 352 (Ct.Cl.1982) (failure to certify claim prohibits suit for de novo review in federal court under Act).