Danny and Carene GETTLER; H.S. and Maxine Lovett; Robert S. and Hope Mendenhall; Tom and Linda Watkins; Danny Gettler; H.S. Lovett; Tom Watkins; and Hope Mendenhall, Appellants,

v.

Richard LYNG, Secretary of the United States Department of Agriculture; The United States Department of Agriculture, an agency of the United States Government, Appellees.

Danny and Carene GETTLER; H.S. and Maxine Lovett; Robert S. and Hope Mendenhall; Tom and Linda Watkins, Appellants,

v.

Richard LYNG, Secretary of the United States Department of Agriculture; The United States Department of Agriculture, an agency of the United States Government, Appellees.

Nos. 87–2178, 87–2265.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1988.

Decided Sept. 22, 1988.

Brent R. Appel, Des Moines, Iowa, for appellants.

Wendy M. Keats, Dept. of Justice, Washington, D.C., for appellees.

Before WOLLMAN and BEAM, Circuit Judges, and LARSON,* Senior District Judge.

WOLLMAN, Circuit Judge.

The Gettlers, Lovetts, Mendenhalls, and Watkinses (collectively the Gettlers) appeal that portion of the district court's [1] judgment rejecting their challenge to the validity of regulations promulgated by the Secretary of Agriculture (the Secretary) to implement the Special Disaster Payment Program (the SDPP), 7 U.S.C. § 1444d(b)(2) (1982). We affirm.

## I.

The Gettlers are grain and livestock producers in southern Iowa who suffered economic loss from a severe drought in 1983.

---

* The HONORABLE EARL R. LARSON, United States Senior District Judge for the District of Minnesota, sitting by designation.

1. The Honorable William C. Stuart, United States Senior District Judge for the Southern District of Iowa.

In 1984, they joined in a suit commenced by the State of Iowa to force the Secretary to implement various relief programs, including the SDPP. The Secretary contended that promulgation of regulations to implement the SDPP was entirely discretionary. The district court agreed and dismissed the action. We reversed. *See Iowa ex rel. Miller v. Block*, 771 F.2d 347, 351–52 (8th Cir.1985), *cert. denied*, 478 U.S. 1012, 106 S.Ct. 3312, 92 L.Ed.2d 725 (1986). We held that the Secretary had a duty to promulgate regulations, and remanded the case to the district court. *Id.* at 355. The district court remanded to the agency for "promulgation and implementation of regulations consistent with the intent of Congress in enacting" the SDPP. The Secretary, after full notice and comment, approved final regulations on June 9, 1986. 51 Fed.Reg. 21,326 (1986) (codified at 7 C.F.R. § 1476.120–.127 (1987)). The Gettlers then amended their complaint to allege that various aspects of the new rules were invalid as arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. The district court, with two exceptions, rejected the Gettlers' challenges, and this appeal followed.

In 1980, Congress expanded federal all-risk crop insurance into all agricultural counties, *see* Federal Crop Insurance Act of 1980, Pub.L. No. 96–365, § 105, 94 Stat. 1312, 1314 (codified at 7 U.S.C. § 1508 (1982)) (the 1980 Act), intending that the insurance be agricultural producers' primary protection against natural disaster. To encourage broad participation in the insurance program, the 1980 Act directed the Federal Crop Insurance Corporation to pay thirty percent of each producer's premiums. *See* 7 U.S.C. § 1508(b)(3); *see also* H.R.Rep. No. 430, 96th Cong., 2d Sess. 7 (1979), *reprinted in* 1980 U.S.Code Cong. & Admin.News 3068, 3069. In addition, Congress determined that phaseout of the disaster payments program was "necessary for the proper functioning and acceptance of the new Federal crop insurance program." H.R.Rep. No. 430, *supra*, at 13, 1980 U.S. Code Cong. & Admin.News 3075.

Recognizing that the expansion of the insurance program might not reach every producer immediately and that insurance indemnity payments might be insufficient to alleviate some emergencies, Congress included the SDPP in the Agricultural Food Act of 1981, Pub.L. No. 97–98, § 401, 95 Stat. 1213, 1229–30 (codified at 7 U.S.C. § 1444d(b)(2) (1982)) (the 1981 Act), as a limited free disaster payment program. The 1981 Act directs the Secretary to make specified payments to producers of feed grains when a natural disaster prevents planting or reduces yields. *See* 7 U.S.C. § 1444d(b)(2)(A) & (B). Producers who have federal crop insurance available to them, however, are not eligible for these payments. *See* 7 U.S.C. § 1444d(b)(2)(C). The 1981 Act also authorizes the Secretary to make disaster payments to producers, notwithstanding the availability of federal crop insurance,

> whenever the Secretary determines that—
>
> > (i) as the result of drought, flood, or other natural disaster, or other condition beyond the control of the producers, producers on a farm have suffered substantial losses of production either from being prevented from planting feed grains or other nonconserving crop or from reduced yields, and that such losses have created an economic emergency for the producers;
> >
> > (ii) Federal crop insurance indemnity payments and other forms of assistance made available by the Federal Government to such producers for such losses are insufficient to alleviate such economic emergency, or no crop insurance covered the loss because of transitional problems attendant to the Federal crop insurance program; and
> >
> > (iii) additional assistance must be made available to such producers to alleviate the economic emergency.
>
> The Secretary may make such adjustments in the amount of payments made available under this subparagraph with respect to individual farms so as to assure the equitable allotment of such payments among producers taking into account other forms of Federal disaster

assistance provided to the producers for the crop involved.

7 U.S.C. § 1444d(b)(2)(D).

The regulations promulgated by the Secretary after our decision in *Miller* primarily define when a natural disaster has caused losses of production that create an economic emergency for the producer, and when federal crop insurance indemnity payments and other forms of federal assistance available for such losses are insufficient to alleviate the economic emergency. On appeal, the Gettlers challenge the following aspects of the regulations: (1) the definition of economic emergency as "a loss of 60 percent or more of the value of all crop production," 7 C.F.R. § 1476.120(b)(1) (1987); (2) the inclusion of available federal crop insurance indemnity payments, regardless of whether the farmer actually enrolled in the program, in determining whether other forms of federal assistance are insufficient to alleviate the economic emergency, 7 C.F.R. §§ 1476.-120(b)(2)(ii), 1476.125(b)(3)(iv)(A); (3) the inclusion, in that determination, of Farmers Home Administration (FmHA) loans made available for the loss, 7 C.F.R. § 1476.125(b)(3)(iv)(C); and (4) the failure to consider both the potentially greater impact of the disaster on producers who feed their grain to livestock and the impact of successive natural disasters. These provisions, the Gettlers argue, make recovery impossible and constitute an unlawful "back-pocket veto." [2]

## II.

■ We may invalidate agency regulations promulgated under informal rulemaking procedures only upon determining that the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (1982); *see Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 41, 103 S.Ct. 2856, 2865, 77 L.Ed.2d 443 (1983);

*Arkansas Pharmacists Ass'n v. Harris,* 627 F.2d 867, 870 (8th Cir.1980). "While the courts will not hesitate to strike down regulations that are unauthorized or illegally promulgated, they will not attempt to substitute their judgment for that of the administrative agency." *Arkansas Pharmacists Ass'n,* 627 F.2d at 870 (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971)); *see Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866.

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2867. We find that the Secretary's actions are not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

## A.

■ The Gettlers first assert that the "value" of the crop loss is an irrational indicator of a producer's financial situation and contend that the rule instead should focus on the drought's overall impact on a producer's financial posture. Congress, however, expressed no intent to provide relief beyond the loss in crop production. The 1981 Act focuses on emergencies caused by substantial losses of production from prevented plantings or from reduced yields. We cannot find it arbitrary or capricious to base the definition of an economic emergency caused by loss of production on the objectively determined value of that loss.

---

**2.** The district court agreed with the Gettlers on two points: the regulations improperly conditioned eligibility on the existence of a countywide disaster area and improperly failed to provide a procedure for determining whether a

lack of federal crop insurance coverage was a result of transitional problems. The Secretary initially noticed an appeal on these issues, but later withdrew it.

■ The Gettlers also argue that a loss in crop value of sixty percent is an unreasonably high eligibility requirement. They rely on the statement of Agriculture Under Secretary Frank Naylor that a thirty percent crop loss is "a major significant natural disaster." *Problems Caused by the Drought Situation: Hearings Before the House Comm. on Agriculture*, 98th Cong., 1st Sess. 8 (1983) [hereinafter *Hearings*]. Under Secretary Naylor, however, was discussing designation of disaster areas for FmHA emergency loan eligibility. The SDPP statutory requirements are more extensive, and the SDPP is intended only as the relief of last resort.

In explaining the SDPP's sixty percent loss figure, the Secretary stated that " '[e]conomic emergency' suggests the occurrence of conditions much more severe than those that arise, not uncommonly, from adverse conditions of limited scope." 51 Fed.Reg. 21327 (June 12, 1986). He reasoned that although "losses above the average seasonal fluctuations in productivity of 20 to 30 percent" could force the producer to make certain management decisions, sixty percent represented the type of loss contemplated by the statute. *Id.* The Secretary also relied on the findings in the *Report of Committee to Establish Special Disaster Payment Criteria, reprinted in Hearings, supra*, at 51–54, which recommended a sixty percent loss figure. Our role is not to ascertain the one best figure by substituting our judgment for that of the Secretary. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, 103 S.Ct. at 2866. We must decide whether the explanation for the sixty percent figure is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* We conclude that it is not.

### B.

■ The Gettlers' next argument is that in determining whether there is insufficient assistance to alleviate the economic emergency, available federal crop insurance indemnity payments should not be considered if the producer has not actually purchased the crop insurance. *See* 7 C.F.R. §§ 1476.-120(b)(2)(ii), 1476.125(b)(3)(iv)(A). We first note that the Gettlers' primary argument apparently is that available crop insurance payments should not be considered when a producer's failure to purchase the insurance was due to "transitional problems attendant to the Federal crop insurance program." 7 U.S.C. § 1444d(b)(2)(D)(ii). To the extent that this is their argument, they have prevailed on this issue before the district court, and that issue is not before us. The district court ordered the Secretary to define "transitional problems" in the regulations, and that determination has not been appealed.

We are left then with considering the validity of including indemnity payments as assistance when there were no transitional problems, but a producer chose not to purchase federal crop insurance.[3] The language of the 1981 Act itself answers this question. The statute requires consideration of "Federal crop insurance indemnity payments * * * *made available* by the Federal Government to such producers for such losses." 7 U.S.C. § 1444d(b)(2)(D)(ii) (emphasis added). Furthermore, the language mandating consideration of transitional problems would be unnecessary under the Gettlers' reading. The Secretary would need only determine whether the producer actually received indemnity payments. If he did not, the payments would not be included, regardless of whether the lack of coverage was due to transitional problems. The portion of the statute providing for consideration of transitional problems therefore would be superfluous, and "[a] statute should not be interpreted

---

3. The Gettlers rely on a statement in the *Report of Committee to Establish Special Disaster Payment Criteria, reprinted in Hearings, supra,* that "if special disaster payments are to be made, they should be made to all farmers regardless of whether insured or not." *Id.* at 54. The committee, however, was assuming that noninsureds could collect the payments and reasoned that it would be "unjust to penalize the farmer who manages his risks through the use of insurance as a risk management tool, and reward the uninsured not utilizing this risk management tool." *Id.* at 53–54. The Secretary's regulations treat farmers with insurance available to them equally and do not reward the uninsured.

so as to render the legislature's language mere surplusage." *Bellanca Aircraft Corp. v. Anderson–Greenwood Aviation Corp.*, 850 F.2d 1275, 1280 (8th Cir.1988) (citation omitted). By providing for transitional problems, Congress sought to establish those instances when crop insurance, although technically available, should *not* be counted as available assistance. *See* S.Rep. No. 126, 97th Cong., 1st Sess. 78, *reprinted in* 1981 U.S.Code Cong. & Admin.News 1965, 2043. Accordingly, it was reasonable for the Secretary to conclude that in all other instances available crop insurance should be counted.

For these reasons, and in light of Congress' express intent that the SDPP not serve as a disincentive to full participation in the federal crop insurance program, *see* H.R.Rep. No. 430, *supra*, at 13, *reprinted in*, 1980 U.S.Code Cong. & Admin.News 3075; S.Rep. No. 126, *supra*, at 76, U.S. Code Cong. & Admin.News 2041, we do not find the Secretary's decision to consider available federal crop insurance indemnity payments, regardless of whether the producer purchased coverage, to be arbitrary or capricious.

### C.

■ The Gettlers' next contention is that it is irrational to include FmHA loans when determining the sufficiency of federal assistance because a loan is not income and must be repaid.[4] Although they must be repaid, FmHA emergency loans are a "form[ ] of assistance made available by the Federal Government to such producers for such losses." 7 U.S.C.

§ 1444d(b)(2)(D)(ii). The Secretary determined that FmHA loans should be included because "it is the purpose of such assistance to alleviate such emergencies." 51 Fed.Reg. 21328. We cannot find this determination to be arbitrary or capricious.

### D.

■ The Gettlers also contend that the regulations must account for the special circumstances of grain producers who feed their crops to livestock, as well as the impact of successive disasters. We find no indication in the statute or legislative history that the Secretary is required to make fine distinctions based on each individual producer's circumstances.[5] The program is directed towards losses of production of feed grains that create an emergency. Congress has provided other relief programs that explicitly address the needs of livestock farmers. *See, e.g.*, Livestock Feed Program, 7 U.S.C. § 1427 (1982); Emergency Feed Program, 7 U.S.C. § 2267 (1984). We do not find failure to distinguish between particular types of farming operations, or failure to account for the previous year's yield, to be arbitrary or capricious, and we agree with the district court that "[i]t would be most difficult if not impossible to administer a program on this basis."

### E.

Finally, the Gettlers argue that the regulations effectively constitute a "back pocket" veto of the program that flies in the face of our holding in *Allison v. Block*, 723 F.2d 631 (8th Cir.1983). In *Allison*, how-

---

4. The district court ruled that such loans may be considered "when determining the government assistance available to alleviate the economic emergency or when determining if additional assistance must be made for that purpose," but that they may not be considered in determining if an "economic emergency" exists. The Secretary assents to that interpretation.

5. In his response to comments, the Secretary stated: "Meeting a producer's expectations related to feeding livestock or selling grain on the open market or any other economic decision of the producer would prove to be expensive and impossible to achieve fully." 51 Fed.Reg. 21327. The Secretary noted that livestock producers are

more likely than producers who sell their crop to benefit from the silage value of a crop affected by a disaster. The Secretary also pointed out that some producers are more likely than others to forward contract. Such producers, when their crop is destroyed, also must purchase crops on the open market to satisfy their contractual obligations. Thus, the Secretary concluded that "[t]he special disaster payment criteria simply cannot take into account all economic decisions made by producers. In accordance with the statutory authorities for the program, the program is based on loss of production." *Id.*

ever, the Secretary had completely failed to implement a program. *Id.* at 633. Here, the Secretary has promulgated detailed regulations implementing the program. We have examined each challenge to the regulations and have found that the regulations are not arbitrary, capricious, an abuse of discretion, or contrary to law. Given Congress' intended use of the program and the particular challenges raised, we do not find that the cumulative effect of the regulations constitutes a "back pocket" veto.

The judgment of the district court is, in all respects, affirmed.