# TUTTLE/WHITE CONSTRUCTORS, INC.

v.

## The UNITED STATES.

### No. 205–80C.

United States Court of Claims.

July 29, 1981.

Kunzig, J., concurred and filed opinion.

David L. Reynolds, Jackson, Miss., atty. of record, for plaintiff. Benjamin P. Fishburne, III, Robert B. Wallace, Carol M. Welu, Surrey & Morse, Washington, D. C., and Reynolds, Mockbee & Johnson, Jackson, Miss., of counsel.

Robert E. Richardson, Washington, D. C., with whom was Acting Asst. Atty. Gen. Thomas S. Martin, Washington, D. C., for defendant. Thomas W. Petersen, Ray Goddard, Washington, D. C., and Alva A. Hall, Division Trial Atty., and Anne W. Westbrook, Asst. Dist. Counsel, U. S. Army Corps of Engineers, of counsel.

Before NICHOLS, KUNZIG and SMITH, Judges.

1. 41 U.S.C. §§ 601 *et seq.* (Supp. II 1978).

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SMITH, Judge:

This Government contract case, on which we have heard oral argument, is before the court on defendant's motion for summary judgment. We are unable to find, in the particular circumstances of this case, that plaintiff elected to proceed under the Contract Disputes Act of 1978.[1] Accordingly, we grant defendant's motion.

### I.

On September 28, 1977, plaintiff entered into a contract with the Department of Army Corps of Engineers for the construction of an enlisted men's barracks complex at Fort Bragg, North Carolina. The contract (No. DACA21–77–0166) specified that a substantial portion of the barracks was to be constructed with masonry units, known as CMU blocks. During construction, the parties disagreed as to whether the interior walls of the barracks should be assembled in a stack bond fashion or in a running bond pattern. Although plaintiff had interpreted the contract to call for the stack bond pattern, defendant nevertheless directed plaintiff to lay the CMU blocks in a running bond pattern. Since the use of the running bond pattern significantly increased plaintiff's costs, plaintiff submitted a claim to the contracting officer for an equitable adjustment of the contract to cover its additional costs.

Plaintiff's claim for equitable adjustment was denied by the contracting officer on May 16, 1979. In the denial letter of that date he stated:

This is my final decision as Contracting Officer. Decisions on disputed questions of facts and on other questions that are subject to the procedures of the Disputes clause may be appealed in accordance with the provisions of that clause. If you decide to make such an appeal from this decision, written notice thereof (in triplicate) must be mailed or otherwise furnished to the Contracting Officer within

30 days from the date you receive this decision. Such notice should indicate that an appeal is intended and should reference this decision and identify the contract by number. * * * Please advise this office if you elect to have this dispute subject to the Contract Disputes Act of 1978. You have already been furnished a copy of this Act.

In response, plaintiff's project manager advised the contracting officer by letter dated June 4, 1979, as follows:

Reference is made to your letter of May 16, 1979 regarding your final decision in the matter of the masonry walls in the Barracks buildings being installed in a running bond pattern.

This is our notice to you that we desire to appeal from this decision.

This letter made no reference to the Contract Disputes Act.

The Armed Services Board of Contract Appeals (ASBCA) processed plaintiff's letter as an appeal to it and informed plaintiff by certified mail[2] of the ASBCA docket number it had assigned to the appeal. At that time plaintiff was notified that its appeal would be governed by the rules of the ASBCA. Plaintiff raised no objection nor indicated any desire on its part to pursue its claim in this court under the Contract Disputes Act. Subsequently, plaintiff allegedly decided to withdraw its appeal because the parties had continued to negotiate with the contracting officer and were trying to arrive at a mutually acceptable settlement. Plaintiff requested a dismissal of the appeal. Pursuant to this request, the ASBCA dismissed plaintiff's appeal with prejudice on September 10, 1979.

On May 2, 1980, plaintiff petitioned this court, pursuant to the Contract Disputes

Act, for a trial de novo on its claim. Defendant at that point refused to proceed with the scheduled negotiations. Defendant now moves for dismissal of the petition but so informs the court that it will not oppose reinstatement of this plaintiff's appeal before the ASBCA. It is defendant's position that the ASBCA appeal foreclosed plaintiff's right to proceed in this court under the Contract Disputes Act. Plaintiff, on the other hand, argues that the mere assignment of a docket number by the ASBCA cannot bar an otherwise valid election and insists that the court's recent holding in National Electric Coil[3] compels us to allow plaintiff to proceed with its suit in this court. We do not agree with plaintiff and, based on the following, we grant defendant's motion.

## II.

■ With the passage of the Contract Disputes Act, a new era in the resolution of Government contracts emerged. One of its most significant reforms was to present an alternative to the administrative appeal in contract disputes. Under the new law, which applies to all contracts entered into on or after March 1, 1979, a contractor either can appeal an adverse final decision to the appropriate board of contract appeals[4] or seek relief from the contracting officer's decision directly in this court.[5] Given the fundamental differences between the two forums, the contractor thus must make an important initial strategic decision; namely, which forum would be better suited to hear its particular claims.[6]

With respect to pre-March 1, 1979, contracts, section 16 of the act provides that "[n]otwithstanding any provision in a contract made before the effective date of this

2. Plaintiff acknowledged receipt of the ASBCA letter on July 2, 1979.

3. National Elec. Coil v. United States, Ct.Cl. No. 79–80C (order entered March 17, 1981).

4. 41 U.S.C. § 606 (Supp. II 1978).

5. 41 U.S.C. § 609(a)(1) (Supp. II 1978).

6. For example, the court does not have provisions in its rules for accelerated handling of small claims but, under the new act, the boards of contract appeals have statutorily mandated procedures for the accelerated disposition of any appeal where the amount in dispute is $50,000 or less (41 U.S.C. § 607(f) (Supp. II 1978)) and for the expedited disposition of any appeal where the amount in dispute is $10,000 or less. (41 U.S.C. § 608 (Supp. II 1978).)

Act, the contractor *may elect* to proceed under this Act with respect to any claim pending then before the contracting officer or initiated thereafter."[7] (Emphasis supplied.) In other words, although the Contract Disputes Act does not automatically apply to such contracts, including the one here in dispute, the contractor is given the right to elect to have the act extend to such claims. In these circumstances, the contractor would have to make two distinct elections. First the contractor must decide whether to elect to proceed under the new act at all. If that election is made, the contractor would further have to choose a forum in which to pursue its claim. Absent an election to proceed under the new act, the disputes clause of the pre-March 1, 1979, contract would govern the resolution of the dispute.

That being the case, we must find that plaintiff at an appropriate point elected to have the parties' pre-March 1, 1979, contract governed by the new act. We find that plaintiff has failed to make that election. Although the contracting officer had requested that plaintiff notify his office if plaintiff intended to proceed under the act, plaintiff submitted, pursuant to the procedures set forth in the contract's disputes clause, its notice of appeal to the contracting officer without any mention of the new act. Nor did plaintiff elect to have the dispute subject to the Contract Disputes Act when it received notice of the docketing by the ASBCA.

Plaintiff vigorously argues that it elected to have the dispute subject to the Contract Disputes Act when it instituted the present suit. Having withdrawn the former appeal, plaintiff contends that it was free to elect to proceed in this court under the Contract Disputes Act. We do not agree; plaintiff originally chose to appeal the contracting officer's adverse decision to the ASBCA and now that choice must stand. Plaintiff appealed the contracting officer's final decision to the ASBCA, and once this avenue

was chosen for resolution of its dispute, we hold that plaintiff could no longer elect to bring suit directly in this court under the Contract Disputes Act.

■ It is a fact that the Contract Disputes Act does not set forth a specific time period within which an election to proceed under that act must be made, nor does the act prescribe the manner in which such election must be made. However, it is clear that, for the comprehensive purposes of the act to be implemented, the contractor is under certain compulsions of time and choice that point to a requirement that the contractor make a positive election whether to come under the act at such time and in such manner as are consistent with the options that it has and which remain open to it from time to time. For example, in a pre-March 1, 1979, contract, where a contractor makes a conscious and unwavering election to proceed under the disputes clause of the contract, it obviously must move to implement that election within 30 days of the contracting officer's final decision. Where a contractor makes a conscious and unwavering election to proceed under the act *and* before a board, it obviously must implement that election within 90 days of the final decision. Where a contractor makes a conscious and unwavering decision to come under the act and proceed directly to this court, it obviously must implement that election by filing a petition here within 12 months of the final decision of the contracting officer. Thus, had plaintiff not responded to the contracting officer and to the board as it did, it clearly could have done nothing for almost 12 months and then could have availed itself of direct access to this court, or abandoned its claim. In choosing direct access it would of necessity have had to invoke the act. Those are not the facts of this case.

In response to the contracting officer's notice that questions which are subject to the procedures of the disputes clause may be appealed by written notice to the con-

**7.** Contract Disputes Act of 1978, Pub.L.No.95–563, § 16, 92 Stat. 2391, 41 U.S.C. § 601 note (Supp. II 1978).

tracting officer within 30 days, plaintiff, within such 30-day period, responded that it desired to appeal. With respect to the contracting officer's request that his office be advised if plaintiff elects to have the dispute subject to the Contract Disputes Act, plaintiff made no response. Furthermore, plaintiff took no positive action which could be described as an election under section 16 of the act until it filed a petition, 351 days after the contracting officer's decision, and 332 days after noting its intent to appeal, in which petition plaintiff invoked section 10(a)(1) of the act. Plaintiff was furnished a copy of the Contract Disputes Act, was requested specifically to indicate whether it elected to come under the act, and made no response thereto other than to file with the contracting officer a notice of intent to appeal. In light of those facts, we conclude that plaintiff was furnished sufficient information to make a straightforward and conscious election whether to invoke the act, and that its filing a notice of appeal within the 30-day period, in response to the contracting officer's letter, evidenced its decision to proceed under the disputes clause and not under the act. Our conclusions are further supported by the facts that the board's response to plaintiff's notice was consistent with an election by plaintiff to proceed under the disputes clause, particularly in view of the fact that plaintiff made no effort either to clarify its position by advising the board within 90 days that it objected to the board's treatment of its notice or that it desired to proceed under the act, but before the board. Instead, it "kept its options open," eventually withdrew its appeal to the board, and filed suit in this court. To allow this procedure would permit contractors unilaterally to establish their own rules of procedure in cases covered by the act.

Senate Report No. 95–1118 [8] states—

[t]he contractor may elect to proceed under this act with respect to any claims pending then before the contracting officer or initiated thereafter. *It is not in-*

*tended that upon the effective date of this act, a claim currently before an agency board can be switched to a court* * * *. [Emphasis supplied.]

Although this comment is directed to a slightly different set of circumstances, we believe that it expresses the spirit of the act and the intent of the Congress in the circumstances before us. Plaintiff must be held to have made a conscious election to proceed under the disputes clause. Having done so, it is foreclosed from later electing to proceed under the Contract Disputes Act. Having foregone this option it may not bring its case to us without first exhausting its administrative remedies.

Our recent holding in *National Electric Coil* is not applicable to the facts in this case. In that case, involving a pre-March 1, 1979, contract, the contractor was not informed of its right to elect to proceed under the Contract Disputes Act until after an agency board of contract appeals had docketed the contractor's case. Given those facts, we held that the contractor could not have knowingly elected its forum for appeal since the contractor was unaware that the new act could govern the pre-March 1, 1979, contract. Plaintiff's reliance on that case is misplaced since that is not the situation in the instant case. Here plaintiff was informed by the contracting officer of its right to elect to proceed under the new act, was provided with a copy of the act, and was requested specifically to respond on that point. Plaintiff therefore made a knowing election when it appealed the contracting officer's final decision to the ASBCA.

Assuming that the ASBCA would have allowed plaintiff the right to elect to have the pending appeal governed by the new law, that fact in itself would not allow plaintiff to withdraw the appeal to bring suit in this court under section 10(a)(1) of the act. Section 10(a)(1) provides that *"in lieu of* appealing the decision of the con-

**8.** S.Rep.No.95–1118, 95th Cong., 2d Sess., *reprinted in* [1978] U.S.Code Cong. & Ad.News 5235, 5269.

tracting officer * * * to an agency board, a contractor may bring an action directly on the claim in the United States Court of Claims." [9] (Emphasis supplied.) The language "in lieu of" clearly indicates that the contractor has a choice of forums; that does not however allow a contractor to pursue its claim before both forums. Since we find that plaintiff appealed the contracting officer's adverse decision to the ASBCA, plaintiff cannot utilize the direct access provision of the Contract Disputes Act to appeal the adverse decision to this court.

Although the ASBCA dismissed the appeal with prejudice, the record indicates that plaintiff might be permitted to renew its claim before that forum. The parties' correspondence with the administrative law judge indicates that the appeal was dismissed with prejudice in order to facilitate the action before this court and bore no relation to the merits of the claim. Consequently, the ASBCA may find it appropriate to vacate its order which dismissed the appeal.

## CONCLUSION

Based on the foregoing, we grant defendant's motion for summary judgment. Plaintiff's petition is dismissed.

KUNZIG, Judge, concurring:

I concur in the result. I would hold that by docketing an appeal with the ASBCA, plaintiff made a binding election of *forums* under the Contract Disputes Act and is now required to litigate in its chosen arena—the Board—prior to seeking judicial review in this court. *See* 41 U.S.C. § 609(a)(1) (Supp. II 1978). *Cf. National Electric Coil v. United States,* Ct.Cl. No. 79–80C (order entered March 17, 1981) (special circumstances exception). This holding is clearcut and easily understandable, fully supported by the statutory language, and potentially lasting in its significance.

The same cannot be said of the approach taken by the court. Its analysis begins with the statement, not in itself controversial, that "the contractor must decide whether to elect to proceed under the new act at all." *Ante,* at 647. It is the next step in the analysis which troubles me. The court states that said election must be made "at an appropriate point." *Ante,* at 647. Otherwise, some sort of waiver will be deemed to have occurred. This additional requirement, the basis for the court's reasoning, finds no support whatsoever in the statutory language or legislative history. *Compare* 41 U.S.C. § 605(c)(5) (Supp. II 1978); *SCM Corp. v. United States,* Ct.Cl. No. 576–79C (order entered Oct. 10, 1980). Moreover, the test propounded by the court for determining the "appropriate point" is exceedingly vague:

> However, it is clear that, for the comprehensive purposes of the act to be implemented, the contractor is under certain compulsions of time and choice that point to a requirement that the contractor make a positive election whether to come under the act at such time and in such manner as are consistent with the options that it has and which remain open to it from time to time.

*Ante,* at 647. Finally, it is worth noting that the rule adopted by the court applies solely to the inherently limited class of contract claims arising out of pre-Act contracts. My proposed rule, by contrast, has no such limitation.

Nothing in the facts of this case shows that plaintiff ever affirmatively waived its statutory right to proceed under the Contract Disputes Act. Instead, when timely filing its petition in this court, plaintiff unequivocally expressed its election to proceed under the Act. The problem, as I see it, is that by earlier docketing its appeal to the Board, plaintiff had already elected its forum and was no longer authorized by the Act to initiate a direct action in this court. Only when the proceedings before the Board have been brought to a finish may this court take jurisdiction of the case. *See* 41 U.S.C. § 607(g)(1)(A) (Supp. II 1978).

I therefore concur in the result, although, with respect, I prefer to reach it by a different route.

---

**9.** 41 U.S.C. § 609(a)(1) (Supp. II 1978).