**JO–MAR CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 75–87 C.

United States Claims Court.

Oct. 14, 1988.

---

Sam Zalman Gdanski, Spring Valley, N.Y., for plaintiff.

Katherine A. Day, Washington, D.C., with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, for defendant; Eileen P. Fennessy, Military Sealift Command, of counsel.

## OPINION

HORN, Judge.

### INTRODUCTION

Jo–Mar, a corporation, with its principal place of business in Suffolk, Virginia, filed a government contract claim in the United States Claims Court against the United States. In an unusually crafted Complaint, plaintiff appears to allege that as a result of government-induced changes to the contract requirements, delays, additional work and harassment, it is entitled to an equitable adjustment of the contract price.

In response, the government filed a Motion to Dismiss the case for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Claims Court (RUSCC). Arguing in the alternative, the government contends that: 1) plaintiff made a binding election to proceed before the Armed Services Board of Contract Appeals, as a result of which the Claims Court lacks subject matter jurisdiction, in accordance with 41 U.S.C. § 609(a)(1) (Supp. I 1983); or 2) a contract to repair a ship is a maritime contract, therefore, pursuant to 41 U.S.C. § 603 (1982), the action is one in admiralty, for which the United States District Courts are solely vested with original, subject-matter jurisdiction under 46 U.S.C. § 742 (1982).

For the reasons discussed below, based on a review of the papers submitted to the court, and after hearing the presentations made at oral argument, Defendant's Motion to Dismiss the Complaint is, hereby, DENIED. The court, however, will direct the Clerk of the United States Claims Court to transfer this case to the United States District Court for the Eastern District of Virginia.

### BACKGROUND

Although the Complaint filed in this court is not specific as to the exact date or terms of the controlling contract, it would appear, from papers submitted to the court by the parties, that some time prior to June 1984, Jo–Mar, a corporation with its principle place of business in Suffolk, Virginia, entered into a repair contract with the Military Sealift Command (MSC), Department

of the Navy. Under the contract, work on the U.S.N.S. SIRIUS, a Navy combat stores ship, was undertaken. During the pendancy of the repairs, the SIRIUS was docked in Norfolk, Virginia.

Upon completion of the project at issue in the current case, Jo–Mar appears to have filed a claim with the contracting officer (CO), pursuant to 41 U.S.C. § 605 (1982), in which it contended that it was entitled to an equitable adjustment due to government-induced delays, changes to the contract requirements, additional work and harrassment. In a letter, issued April 16, 1986, included in the Appendix to Defendant's Motion to Dismiss,[1] the CO denied the request for relief relating to the facts of the claim currently before this court.

On June 18, 1986, pursuant to 41 U.S.C. § 606 (1982), Jo–Mar filed a Complaint with the Armed Services Board of Contract Appeals (ASBCA), contesting the April 16, 1986 decision by the CO, but from which no Notice of Appeal had been filed with the ASBCA. Even though the text of the June 18, 1986 Complaint refers to the same MSC contract and the same facts presently disputed in this court, the caption of the June 18 Complaint was identical to one the plaintiff had filed two days earlier on June 16, 1986, also with the ASBCA. The June 16 Complaint addressed a separate CO's decision issued on December 15, 1985, concerning five contract disputes not related to the claim currently before this court, and regarding which Jo–Mar properly had filed a Notice of Appeal on December 15, 1985.[2]

Over the next few months, the ASBCA and both parties attempted to untangle the web of confusion spun by Jo–Mar's two ASBCA filings. Particularly, the parties sought to clarify the inconsistency between the caption on the June 16, 1986 Complaint, filed with the ASBCA, which refers to the CO's adverse ruling of December 5, 1985, and the new Complaint delivered to the ASBCA on June 18, 1986, which disputed the CO's adverse ruling of April 16, 1986. Once counsel for the Navy realized that Jo–Mar's second, June 18, 1986 filing was an attempt to appeal a CO's ruling, unrelated to the one covered in the June 16, 1986 filing, counsel for the Navy contacted the Board. In a letter to plaintiff's counsel, dated November 13, 1986, the Board indicated that Jo–Mar had failed to file a timely Notice of Appeal with the ASBCA to challenge the CO's April 16, 1986 decision, in violation of ASBCA Rule 2, 32 C.F.R. 1–39 vol. III app. A at 414 (1984). Since Jo–Mar had not complied with the ASBCA's published procedures, the Board indicated its intention that the June 18, 1986 Complaint would be "marked for identification and constructively removed from the appeal records."

On February 11, 1987, Jo–Mar filed a Complaint in this court. The Complaint in this court referred to the same facts as included in the case filed with the ASBCA on June 18, 1986, appealing the April 16, 1986 CO's decision, and which the ASBCA had removed from its appeal records. In response to the Complaint, the defendant filed the Motion to Dismiss, which is discussed and decided herein.

DISCUSSION

Under the Contract Disputes Act of 1978, Pub.L. No. 95–563, 92 Stat 2383 (codified as amended at 41 U.S.C. §§ 601–613 (1982)), the contractor has a choice of jurisdictions within which to challenge a CO's decision. A contractor either may file an appeal with the proper board of contract appeals, 41 U.S.C. § 606 (1982), or with the United States Claims Court, 41 U.S.C. § 609(a)(1) (Supp. I 1983). Recognizing the need to confront the burden of increased litigation on adjudicative bodies and on litigants, the courts have developed a body of jurisprudence known as the "Election Doctrine." *National Neighbors, Inc. v. United States*, 839 F.2d 1539, 1541 (Fed.Cir.1988), (citing

---

1. The plaintiff has filed no objection to contest the validity of the documents included in the Defendant's Appendix to its Motion to Dismiss, therefore, for the purposes of deciding the instant Motion to Dismiss, they are accepted by the court as accurate.

2. The December 15, 1985 Notice of Appeal filed by plaintiff's counsel contained descriptive and procedural errors which ultimately led the ASBCA to withdraw two of the five appeals, included in that Notice of Appeal, from its docket.

*Sante Fe Eng'rs, Inc. v. United States,* 230 Ct.Cl. 512, 677 F.2d 876 (1982) and *Tuttle/White Constructors, Inc. v. United States,* 228 Ct.Cl. 354, 656 F.2d 644 (1981)). The doctrine forces contractors to choose between the jurisdictions available to litigants in Sections 606 and 609 of Title 41 and prohibits contractors from pursuing their claims in multiple fora at one time. *Id.* at 1542.

Since the enactment of the Contract Disputes Act, the courts have read that Act to provide the contractor with an "either-or alternative, and not with dual avenues of appeal." *Santa Fe Eng'rs,* 230 Ct.Cl. at 516, 677 F.2d 876; *see also, National Neighbors,* 839 F.2d at 1541–42. In order to determine whether a contractor has made an election, the courts have traditionally focused on whether the contractor made a "conscious and unwavering election to proceed" in one forum over another. *Tuttle/White Constructors, Inc.,* 228 Ct.Cl. at 359, 656 F.2d 644.

In *National Neighbors,* when discussing the Election Doctrine, the United States Court of Appeals for the Federal Circuit adopted the United States Claims Court holding in *Olsberg Excavating Co. v. United States,* 3 Cl.Ct. 249 (1983). As in the present case, *Olsberg Excavating* addresses the implications of the Election Doctrine when a plaintiff fails to file a timely Notice of Appeal with a board of contract appeals. In *Olsberg Excavating,* the United States Claims Court held that a contractor's untimely filing of an appeal with the Department of Transportation Board of Contract Appeals did not constitute a binding election. Once plaintiff failed to file its appeal within ninety days of the CO's ruling, the *Olsberg Excavating* Court noted: "there was no right of election to proceed administratively, no valid means of invoking the jurisdiction of the board, no real 'choice of forums'...." *Id.* at 252.

Because the contractor in *Olsberg Excavating* had failed to perfect its claim before the appropriate board of contract appeals, the plaintiff's only choices were to bring a direct access action in the United States Claims Court or to abandon the claim. *Id.*

The *Olsberg Excavating* Court refused to "equate plaintiff's untimely and misguided 'appeal' with a *forfeiture* of the right timely to bring a direct access action." *Id.* In *Cosmic Constr. Co. v. United States,* 5 Cl.Ct. 237 (1984), the United States Claims Court reaffirmed the *Olsberg Excavating* principle by concluding that an ASBCA's dismissal with prejudice for failure to file an appeal in a timely fashion did not constitute a binding election. *Id.* at 240.

■ In light of *Olsberg Excavating* and *Cosmic Construction,* the issue is not solely whether the contractor has attempted to avail itself of one forum over another. The question includes consideration of whether the forum in which an election or attempted election has been made, is able to exercise jurisdiction at the time of the appeal. Thus, the contractor commits itself to a binding election only when: 1) it has sought to avail itself of one forum over another; and 2) that forum has the ability to exercise jurisdiction at the time the election is attempted. *See National Neighbors,* 839 F.2d at 1542.

The United States Supreme Court has long held that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 16 Ed.2d 306 (1957) (citing *United States v. Sherwood,* 312 U.S. 584, 590–91, 61 S.Ct. 767, 771–72, 85 L.Ed. 1058 (1941)). Whereas the court in *Soriano* was interpreting the Tucker Act, in the instant case, this court is faced with interpreting the Contract Disputes Act in which Congress has waived the Federal Government's sovereign immunity for certain types of contract disputes. Section 606 of the codified Contract Disputes Act states that a contractor, wishing to appeal a contracting officer's decision, must file with the ASBCA a Notice of Appeal, with an agency board of contract appeals, within ninety days after receipt of the contracting officer's decision. 41 U.S.C. § 606 (1982). Timely filing of an appeal is considered a condition to the government's waiver of immunity. "The ninety day deadline is

thus part of a statute waiving sovereign immunity, which must be strictly construed." *Cosmic Constr. Co. v. United States,* 697 F.2d 1389, 1390 (Fed.Cir.1982).

The ASBCA has promulgated rules which govern appeals to be brought before it. 32 C.F.R. 1–39, vol. III app. A (1984). These procedural rules were published pursuant to the Board's powers derived from the Contract Disputes Act. Because that Act contains the government's waiver of immunity from suit, which according to the Supreme Court must be strictly construed, *see Soriano,* 352 U.S. at 276, 77 S.Ct. at 273, the procedural requirements of all rules promulgated thereunder should be strictly construed. Rule 1 of the ASBCA rules, 32 C.F.R. 1–39, vol. III app. A at 413 (1984), which governs the procedure for appealing a ruling by a CO to the Board, states:

> (a) Notice of an appeal shall be in writing and mailed or otherwise furnished to the Board within 90 days from the date of receipt of a contracting officer's decision. A copy thereof shall be furnished to the contracting officer from whose decision the appeal is taken.

*Id.* To satisfy the Supreme Court's holding in *Soriano,* Rule 1, which requires the filing of a Notice of Appeal, and describes the proper procedures to prosecute an appeal, must be strictly construed. In accordance with Rule 1, a claimant before the ASBCA, therefore, is required to file a timely Notice of Appeal. The filing of a Complaint with the ASBCA, absent the filing of a Notice of Appeal, is insufficient. Avoidance of the filing of a Notice of Appeal, in fact, could frustrate the purpose of Rule 1, which requires not only the filing of a timely Notice of Appeal with the Board, but also provides that a copy of the Notice of Appeal must be furnished to the contracting officer from whose ruling the appeal is being taken.

The ASBCA recorder chose to honor only those appeals included in the June 16, 1986

Complaint, which had been properly filed. Therefore, on November 13, 1986, the Board removed the June 18, 1986 Complaint (which raised the issues included in the claim currently before this court) from the ASBCA docket, because no claim had been perfected in the ASBCA.[3] Under the test set out in *National Neighbors,* 839 F.2d at 1542, the ASBCA could not exercise jurisdiction of the case because, Jo–Mar had not complied with the applicable Rules of the Board.

■ Both parties agree that Jo–Mar failed to file a Notice of Appeal and filed only a Complaint with the ASBCA to contest the April 16, 1986, CO's decision. In furtherance of its argument that a binding election of forum had been made by the plaintiff, the government argues, however, that Jo–Mar's filing of the Complaint in the ASBCA actually operated as a constructive Notice of Appeal with the ASBCA. This contention is incorrect, given the strict way in which the Contract Disputes Act and the ASBCA Rules have been interpreted.

ASBCA Rule 2 explicitly states that:

> [a] notice of appeal should indicate that an appeal is being taken and should identify the contract (by number), the department and/or agency involved in the dispute, the decision from which the appeal is taken, and the amount in dispute, if known. The notice of appeal should be signed personally by the appellant (the contractor taking the appeal), or by the appellant's duly authorized representative or attorney. The complaint referred to in Rule 6 may be filed with the notice of appeal, or the appellant may designate the notice of appeal as a complaint, if it otherwise fulfills the requirements of a complaint.

32 C.F.R. 1–39, vol. III app. A at 414 (1984). Since the rule specifically contemplates the possibility of a notice serving as a Complaint, it would appear that if the ASBCA had intended a situation in which the Com-

---

**3.** Although it is unclear why, when it removed the June 18, 1986 Complaint from the docket, the Recorder marked the June 18, 1986 Complaint for identification, the court believes that the Board acted in order to help clarify the confusion regarding the other Jo–Mar cases, properly filed with the Board.

plaint could serve as notice, it would have so stated.

A contract board of appeals has, and must have, discretionary power to manage its docket. *Metadure Corp. v. United States,* 6 Cl.Ct. 61, 66–67 (1984). Under the facts present in the case before this court, the ASBCA did not abuse its discretion when the Recorder dismissed the June 18, 1986 Complaint and did not exercise jurisdiction over Jo–Mar's Complaint. The dismissal of the June 18, 1986 Complaint by the ASBCA precludes the application of the Election Doctrine to this case because the forum in which Jo–Mar attempted to elect to prosecute its claim did not, and could not exercise, jurisdiction of the appeal, due to Jo–Mar's failure to file a timely Notice of Appeal.

The court recognizes that it is the lack of attention to detail displayed by Jo–Mar's counsel in filing its complaints before the ASBCA which has afforded plaintiff the opportunity to try to bring Jo–Mar's claim before this forum. This pattern is disturbing because it shows, at best, an indifference towards conserving judicial resources. What makes the situation worse, however, is that even when plaintiff's counsel chose to file in this court, he failed to recognize the maritime nature of the dispute at bar, given that the underlying contract in question is one for repairs to a ship.

■ The federal courts have traditionally held that contracts contemplating repairs on ships are maritime contracts. *Kossick v. United Fruit Company,* 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961) (citing *Endner v. Greco,* 3 F. 411 (D.C.N.Y.1880)); *The Robert W. Parsons,* 191 U.S. 17, 33–34, 24 S.Ct. 8, 18–19, 48 L.Ed. 73 (1903). Such contracts, for repairs on ships are governed by the Suits in Admiralty Act, 46 U.S.C. §§ 741–752 (1982), a body of law judicially entrusted to the United States District Courts. *United States v. United Continental Tuna Corp.,*

425 U.S. 164, 172, 96 S.Ct. 1319, 1324, 47 L.Ed.2d 653 (1961); *Whitey's Welding & Fabrication v. United States,* 5 Cl.Ct. 284, 285–87 (1984).

Section 609(a)(1) of the codified Contract Disputes Act, 41 U.S.C. § 609(a)(1) (Supp. I 1983), grants the United States Claims Court appellate jurisdiction over a contracting officer's decision. The Act, however, suggests maritime contracts should be excluded from the court's jurisdiction. In the case of maritime contracts, Section 603 of the Act states that:

> [a]ppeals under paragraph (g) of section 607 [Review of Agency Board of Contracts Appeals] and suits under section 609 of this title [Judicial Review of Board Decisions] arising out of maritime contracts, shall be governed by chapter 20 or 22 of Title 46 [The Suits In Admiralty Act or The Public Vessels Act] as applicable, to the extent that those chapters are not inconsistent with this chapter.

41 U.S.C. § 603 (1982). Certainly, the language in Section 603 of the Contract Disputes Act is not entirely clear when it provides that "maritime contracts, shall be governed by chapter 20 or 22 of Title 46 as applicable, *to the extent that those chapters are not inconsistent with this chapter." Id.* (emphasis added).[4]

The intent of the Congress not to disrupt the United States District Court's traditional jurisdiction over maritime contracts is most clearly articulated, however, in the legislative history to the Contract Disputes Act. The United States House of Representatives, when enacting the original bill which ultimately gave rise to Section 603, specifically included language to "clarify the fact that the admiralty jurisdiction of the district courts is not changed by the provisions of the bill." H.R.Rpt. 1556, 95th Cong., 2d Sess., 4 (1978). *See generally Whitey's Welding & Fabrication v. United States,* 5 Cl.Ct. 284 (1984) (which dis-

---

**4.** In *Whitey's Welding,* the United States Claims Court recognized, that the language "to the extent that these Acts are not inconsistent with this Act" could suggest that when the Contract Disputes Act and the Suits In Admiralty Act are in conflict the former should control. The *Whi-*

*tey Welding* court, however, suggested an answer to its own question by stating that the language in question was intended to resolve only substantive inconsistencies and not jurisdictional ones. *Whitey's Welding & Fabrication,* 5 Cl.Ct. at 286.

cusses the impact of the legislative history of the Contract Disputes Act on maritime contract disputes).

The United States Senate, as well, addressed the issue. When its version of the bill, S. 3178, 95th Cong., 2d Sess. § 3 (1978), reached the floor, the Senate chose to follow the same approach as the House so that "the current jurisdiction for Maritime Contract claims is to be maintained and not changed ..." *Compare* 124 Cong. Rec. 36,267 (1978) (discussing amendments to S. 3178) *with* H.R. 11002, 95th Cong., 2nd Sess. § 10 (1978). *See also Whitey's Welding & Fabrication,* 5 Cl.Ct. at 287.

Prior decisions of the United States Claims Court also have held that contract disputes involving maritime contracts should be referred to the appropriate United States District Court. *Boston Shipyard Corp. v. United States,* 9 Cl.Ct. 450 (1986) and *Whitey's Welding & Fabrication v. United States,* 5 Cl.Ct. 284 (1984).

Although this court shares expertise with the District Courts regarding the ajudication of contract disputes involving the United States, it is clear that only the District Courts have unique expertise and experience regarding suits in admiralty. As indicated by the Supreme Court in *Amell v. United States,* 384 U.S. 158, 86 S.Ct. 1384, 16 L.Ed.2d 445 (1966): "As in other jurisdictional questions involving intersecting statutes, there is no positive answer." *Amell,* 384 U.S. at 166, 86 S.Ct. at 1389.[5]

Given Section 603 of the Contract Disputes Act, 41 U.S.C. § 603 (1982), and the legislative history to that section, however, this court is unwilling to assume jurisdiction of the case. Moreover, in light of the prior decisions of the United States Claims Court, in similar fact situations and discussed above, the court's conclusion that this case should be considered a maritime case, best handled by the United States District Courts, should come as no surprise to the plaintiff, Jo–Mar.

CONCLUSION

Defendant's Motion to Dismiss is hereby, DENIED. Because the plaintiff never properly filed a Notice of Appeal with the ASBCA and because plaintiff's filing of a Complaint with the ASBCA did not constitute constructive notice, the ASBCA never had, and could not have asserted, jurisdiction over the case. Therefore, the plaintiff did not make a valid election under the Election Doctrine and did not deprive itself of the opportunity to file an action in this court. Nonetheless, given that this claim is in the nature of a contract dispute regarding repairs to a ship, plaintiff's claim constitutes a maritime, contract dispute. As a result, the action should be considered one in admiralty and, therefore, should be transferred to the appropriate Federal District Court. 28 U.S.C. § 1631 (1982).

The only issue which remains for the court to decide is to which District Court this case should be transferred. The court first recognized the need to consider transferring the case to a United States District Court during oral argument. At that time, neither party was able to respond to the court's inquiry as to which would be the proper District Court. As a result, the court ordered the parties to file, within five (5) days of oral argument, separate Status Reports, indicating to which District Court each believed transfer would be proper, in the event the court so ordered.

Defendant promptly filed, as required; however, the court never received a report from the plaintiff. The court, therefore, once again consulted with both parties in a joint telephone conference, held on October 12, 1988. During the telephone conference, both parties agreed on the United States District Court for the Eastern District of Virginia as the appropriate District Court.

In choosing the Eastern District of Virginia as the proper forum, the court notes that Jo–Mar's permanent place of business is located in Suffolk, Virginia, and that when the repairs to the U.S. Navy Ship

---

5. In *Amell,* the Supreme Court found that an employee working on a government owned ship could file a wage claim exceeding $10,000 with the United States Claims Court because the Claims Court has been traditionally recognized as a forum to address government employee wage disputes.

SIRIUS were performed, it was located in Norfolk, Virginia. *See* 46 U.S.C.App. § 742 (1982). The court, therefore, ORDERS the case transferred to The United States District Court for the Eastern District of Virginia.

For the foregoing reasons, the Defendant's Motion to Dismiss is DENIED. The Clerk of the Court is directed to enter judgment in accordance with the findings herein.

Costs are to be awarded to the defendant.

IT IS SO ORDERED.