**A Joint Venture of MARSHALL ASSOCIATED CONTRACTORS, INC., etc., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 93–665C.

United States Court of Federal Claims.

Sept. 1, 1994.

Charles F. Adams, Portland, OR, for plaintiff. Richard A. Franzke and Richard Gleason, of counsel.

Shalom Brilliant, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. David M. Cohen, Director, Elaine England, Dept. of Interior, of counsel.

## OPINION

FUTEY, Judge.

This contract case is before the court on defendant's motion to dismiss pursuant to RCFC 12(b)(1). Defendant, the United States, on behalf of the United States Department of Interior (DOI), Bureau of Reclamation (BOR), states that plaintiff is involved in a similar action pending in another court. Therefore, defendant moves to dismiss this action for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1500 (1988). Additionally, defendant moves to dismiss plaintiff's monetary claim for lack of subject matter jurisdiction because the claim was not presented to a Contracting Officer (CO) for a final decision.

Plaintiff, Marshall, however, argues that the court has jurisdiction because the instant action does not involve similar claims, and is not barred by 28 U.S.C. § 1500. In the alternative, rather than dismiss this action, plaintiff requests that the United States Court of Federal Claims transfer the case to the Interior Board of Contract Appeals.

## Factual Background

On September 4, 1992, the BOR awarded plaintiff, Marshall, contract NO. 2–07–40–C0809, to produce sand and aggregate for construction of the Stillwater Dam in Utah. Plaintiff experienced difficulty processing material which met contract specifications. After a year of continually failing to produce an acceptable product, plaintiff rebuilt its crushing facility; however, once again, its efforts failed. Plaintiff retained two geologists to examine its facilities. The experts concluded that the facilities were not the cause of the problem, rather the material itself could not be processed to meet contract specifications. Alleging differing site conditions and defective specifications, plaintiff presented a certified claim for 8.8 million in September 1984 to the CO. The CO, in December 1984, terminated plaintiff's contract for default.

The parties subsequently met on January 18, 1985, to discuss the claim and allegedly agreed to a settlement. Confirming letters were sent after the settlement was reached. On January 18, 1985, the Interior Board of Contract Appeals (IBCA) was formally advised that the claim had been settled. The Board acknowledged the settlement, and the pending appeal of the default termination was dismissed without prejudice. Thereafter, the BOR revised the specifications,

sought new bids, and awarded a contract for completion of the work.[1]

Approximately three months after the alleged settlement, the BOR informed plaintiff that it was not going to abide by the terms of the settlement. The BOR asserted that the CO, who by then had retired, not only had failed to follow internal BOR procedures when he agreed to a settlement, but lacked legal authority under BOR's rules to grant a termination for convenience.

Consequently, plaintiff reinstated its appeal of the default termination with the IBCA. The Board ruled that the CO did not have the authority to properly grant the termination for convenience. In October 1989 plaintiff moved for certification of the question for appeal. In April 1990 the Board dismissed "the appeal without prejudice to reinstatement at such time as appellant is prepared to schedule an immediate hearing on the merits of its case."[2] On October 30, 1992, the CO issued a final decision asserting a claim against Marshall for reprocurement costs in the amount of $3,994,047.

On October 21, 1993, eight days before filing the complaint with this court, the IBCA dismissed Marshall's claim with prejudice for lack of prosecution. The Board noted that after its April 1990 order dismissing the case without prejudice, neither party took any action towards scheduling a hearing on the merits.[3] On October 29, 1993, Marshall filed a complaint with the Court of Federal Claims. In November 1993 plaintiff also filed a motion for reconsideration with the IBCA which was granted on February 15, 1994.

Count I of the complaint in this court asserts that defendant improperly violated the default termination procedures; Count II alleges that the contract was improperly terminated for default; Count III charges the defendant with impropriety regarding the settlement; and, Count IV alleges that there was a material deviation from the original contract on reprocurement.

### Discussion

#### A. Subject Matter Jurisdiction

■ In a motion to dismiss brought under RCFC 12(b)(1), plaintiff bears the burden of establishing subject matter jurisdiction. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991). Nonetheless, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff. *Hamlet v. United States*, 873 F.2d 1414, 1415 (Fed.Cir.1989); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988). Thus, a plaintiff need only make a *prima facie* showing of jurisdictional facts through the submitted material in order to avoid a defendant's motion to dismiss. *Raymark Industry v. United States*, 15 Cl.Ct. 334, 338 (1988), (*citing Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977)). If the undisputed facts reveal any possible basis on which the non-moving party might prevail, the court must deny the motion. *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988). If the motion challenges the truth of the jurisdictional facts alleged in the complaint, however, the court may consider relevant evidence in order to resolve the factual dispute. *Rocovich*, 933 F.2d at 994.

#### B. Jurisdiction Pursuant to 28 U.S.C. § 1500

■ Defendant argues that Marshall is precluded from filing a complaint in the Court of Federal Claims because Safeco, Marshall's surety, has a suit on appeal to the United States Court of Appeals for the Ninth Circuit which seeks to convert the default

---

1. Safeco, Marshall's surety representative, initially objected to the contract being completed by another contractor based upon its possible outstanding liability for any excess reprocurement costs. Once an apparent settlement had been reached to convert the default termination to a termination for convenience, Safeco dropped its objection.

2. Defendant's Motion to Dismiss, Appendix at 5 (App.). The Board dismissed the appeal without prejudice because the Board does not maintain a suspense docket.

3. See App. at 6.

termination into a termination of convenience. If Safeco were to prevail, the decision would relieve both Safeco and Marshall of liability for excess reprocurement costs. Notwithstanding that Marshall is a named defendant in Safeco's suit, the government maintains that Marshall will benefit from a judgment in Safeco's favor. This benefit, defendant argues, is enough to invoke the jurisdictional bar of 28 U.S.C. § 1500. In essence, defendant contends that 28 U.S.C. § 1500 does not require that a party must be a plaintiff in both fora before it applies.

Plaintiff argues that the plain language of 28 U.S.C. § 1500 does not preclude the filing of its complaint when the plaintiff is a defendant in a similar suit in another court. Plaintiff maintains that the obvious and declared purpose of this provision is to require an election of a forum. Plaintiff argues that the statute can only be applicable to persons who are plaintiffs in both courts, because the statute intends to force plaintiffs to choose between pursuing their claims in the Court of Federal Claims or in another court. Section 1500 states:

> The [United States Court of Federal Claims] shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

The first step in a jurisdictional inquiry under 28 U.S.C. § 1500 begins with a comparison of the claims raised in the Court of Federal Claims and in the district court. *Keene Corp. v. United States*, —— U.S. ——, ——, 113 S.Ct. 2035, 2041, 124 L.Ed.2d 118 (1993). To be jurisdictionally barred under 28 U.S.C. § 1500, the suits have to be based on substantially the same operative facts. *Keene*, —— U.S. at —— – ——, 113 S.Ct. at 2042–43; *Johns–Manville Corp. v. United States*, 855 F.2d 1556 (Fed.Cir.1988), *cert. denied*, 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989); *UNR Industries v. United States*, 962 F.2d 1013, 1024 (Fed.Cir. 1992). Furthermore, finding that the two claims arose from the same operative facts is a necessary but not sufficient factor to preclude jurisdiction; the relief sought must also be identical. *Loveladies Harbor v. United States*, 27 F.3d 1545, 1551 (Fed.Cir.1994).[4]

The legislative history and case law indicate that 28 U.S.C. § 1500 was enacted for the benefit of the government and was intended to force an election where either forum could grant the same relief arising from the same operative facts. *Id.* at 1550 (*citing Johns–Manville*, 855 F.2d at 1564). The operative facts do not need to support the same legal theories in order to be similar. *Id.* 27 F.3d at 1548 (*citing Johns–Manville*, 855 F.2d at 1567).

Marshall is not a named plaintiff or an assignee as required by the plain language of 28 U.S.C. § 1500. The purpose of 28 U.S.C. § 1500 is to protect against a claimant tying up government resources by forcing it to simultaneously defend itself in two courts. *UNR*, 962 at 1023. Thus, the statute precludes a *plaintiff* from prosecuting an action both in the Court of Federal Claims and in another court at the same time. *Id.* Even if the district court renders a favorable judgment for Safeco from which Marshall will clearly benefit, Marshall is a named defendant in that case and the statute does not apply.

---

4. In *Loveladies*, the Federal Circuit compared two actions brought by a plaintiff in the United States District Court and in the United States Court of Federal Claims. *Loveladies Harbor*, 27 F.3d at 1548. The Federal Circuit concluded that the two claims did not arise from the same operative facts and did not request the same remedies. *Id.* at 1551. Also, relief in both cases varied significantly because the prayer in the Court of Federal Claims contained an express request for damages where that request was omitted in the complaint submitted to the district court. *Id.* at 1553. In turn, the Federal Circuit concluded that the claims in the two courts presented a straightforward example of the same plaintiff who sought different types of relief in two courts and, thus, was not barred by 28 U.S.C. § 1500 from maintaining both actions. *Id.* at 1554, (citing *Keene Corp. v. United States*, —— U.S. ——, —— – ——, 113 S.Ct. 2035, 2044–45, 124 L.Ed.2d 118 (1993)).

Assuming *arguendo* that Marshall will receive a benefit from a favorable ruling for Safeco, and this does qualify Marshall as a "plaintiff", 28 U.S.C. § 1500 only applies when similar claims are brought in both this court and another forum. Safeco is seeking a declaratory judgment in district court to determine its rights and obligations with respect to the United States and Marshall separately, as well as the rights and obligations between Marshall and the United States. On the other hand, in the action before this court, plaintiff is arguing that: (1) it is not liable for excess reprocurement costs because of the impropriety of the default procedures of the government; (2) the default termination was improper due to the differing site conditions; (3) the default termination was converted to a termination for convenience by settlement agreement; and, (4) the government's reprocurement claim against Marshall should be dismissed. It is clear that plaintiff is focusing solely on its contractual relationship with the government.

Furthermore, it is apparent that the requests for relief differ. Safeco's complaint filed in the district court requests judgment: (1) declaring that the BOR terminated the contract with Marshall for the convenience of the government; (2) enforcing the decision of the CO; and, (3) granting Safeco its costs in the prosecution of its action. Alternatively, plaintiff's complaint filed in this court requests judgment: (1) dismissing the government's claim for excess reprocurement costs; (2) remanding the claim to the CO for issuance of a final decision on the differing site conditions claim; and, (3) enforcing the settlement between Marshall and the BOR.[5] Therefore, the operative facts and the requests for relief before the district court and the Court of Federal Claims differ significantly and do not meet the similar claims test required by 28 U.S.C. § 1500.

## C. *The Interior Board of Contract Appeals (IBCA)*

Next, defendant argues that this court lacks jurisdiction over plaintiff's complaint because plaintiff chose to appeal to the IBCA. The government maintains that once a contractor elects to bring an appeal before an appropriate Board of Contract Appeals, that contractor is bound by that decision and cannot elect to bring a direct access suit in the Court of Federal Claims. Defendant also states that a contractor is deemed to have made a binding election when the contractor chooses one forum over another where that forum had the ability to exercise jurisdiction at the time of the election. Defendant, therefore, maintains that plaintiff made a binding election to resolve the dispute before the IBCA rather than the Court of Federal Claims.

Also, defendant argues that plaintiff is not entitled to litigate a dispute in the Court of Federal Claims that it has been litigating before the IBCA for nine years. Because the IBCA ruled against plaintiff on the settlement issue, but has not yet entered a final appealable judgment for either party, the government maintains that plaintiff must litigate the remaining issues with the IBCA.

Plaintiff responds that its complaint was brought after the IBCA dismissed the default termination suit. Plaintiff maintains that this action is properly before this court because it is based on a reprocurement decision rather than a default termination. Next, plaintiff claims that the Election Doctrine does not preclude Count IV of its complaint, the reprocurement cost claim, because that issue is not before the IBCA. Plaintiff requests that all counts be stayed pending a final decision by the IBCA on the issue of default termination. In the alternative, plaintiff requests that the Court of Federal Claims transfer the claims to the IBCA under 41 U.S.C. § 609(d) (1988).

### 1. *Binding Election*

The contractor may elect to file an appeal either with the appropriate board of contract appeals or with the Court of Federal Claims. *Information Systems & Networks Corporation v. United States,* 17 Cl.Ct. 527 (1989). It is a contractor's initiation of a suit in a proper forum which precludes that contractor from pursuing its claim in an alter-

---

**5.** See *Katz v. Cisneros,* 16 F.3d 1204 (Fed.Cir. 1994) ("[t]he [Court of Federal Claims] does not have the general equitable powers of a district court to grant prospective relief....").

nate forum. *National Neighbors Inc. v. United States,* 839 F.2d 1539, 1542 (Fed.Cir. 1988). A contractor is deemed to have made a binding election when: (1) it has sought to avail itself of one forum over another; and (2) that forum has the ability to exercise jurisdiction at the time the election is attempted. *Information Systems,* 17 Cl.Ct. at 529 (*citing Jo–Mar Corp. v. United States,* 15 Cl.Ct. 602, 605 (1988)). Once a contractor elects to bring an appeal before an appropriate board of contract appeals, the contractor is bound by that decision and cannot later elect to bring a direct access suit in the Court of Federal Claims. *Santa Fe, Inc. v. United States,* 13 Cl.Ct. 464, 466 (1987) (*citing Santa Fe Engineers, Inc. v. United States,* 230 Ct.Cl. 512, 515–16, 677 F.2d 876 (1982); *Tuttle/White Constructors, Inc. v. United States,* 656 F.2d 644, 228 Ct.Cl. 354, 357–8 (1981); *Diamond Mfg. Co. v. United States,* 3 Cl.Ct. 424, 427 (1983)).

In this case, plaintiff elected to file a claim with the IBCA on the issue of the default termination. 41 U.S.C. § 606; *see also National Neighbors,* 839 F.2d at 1542; *Information Systems,* 17 Cl.Ct. at 530; *Jo–Mar Corp.,* 15 Cl.Ct. at 606. The Board exercised its jurisdiction and dismissed the claim with prejudice for lack of prosecution. 41 U.S.C. § 607(d). Thereafter, the IBCA granted plaintiff's motion for reconsideration. Thus, plaintiff made a binding election by filing with the IBCA.

### 2. *Staying the Issue of Reprocurement Costs*

■ Under the Fulford Doctrine, a claim for reprocurement costs may be brought before this court, notwithstanding a claim that is brought before the IBCA by the same plaintiff, under the same contract, challenging a default termination determination. *Russell Corp. v. United States,* 15 Cl.Ct. 760, 763 (1988); *D. Moody & Co. v. United States,* 5 Cl.Ct. 70 (1984); *Primepak Company,* 90–3 BCA 23,280 at 16,754, 1990 WL 125961 (G.S.B.C.A.1990); *GSE Dynamics, Inc.,* 82–2 BCA 16,059, at 79,677, 1982 WL 7837 (A.S.B.C.A.1982); Cibinic and Nash, Administration of Government Contracts, 2d Edi-

tion, The George Washington University 760 (1986).

■ Since the assessment of excess costs does not ordinarily occur at the time of the default termination, a contractor may choose not to contest the default termination because the contractor does not anticipate any monetary liability. The Fulford Doctrine allows the contractor, on timely appeal of assessment of excess costs, to contest the propriety of a default termination even though there was no timely appeal of the default action. *Fulford Manufacturing Co.,* 6 CCF ¶ 61, 816 (A.S.B.C.A.1955); Cibinic and Nash, Administration of Government Contracts, 2d Edition, The George Washington University 760 (1986). The Fulford Doctrine has also been interpreted by the General Services Board of Contract Appeals to embrace all defenses that might be asserted against a default termination, and the Board has adopted the Fulford principle with respect to appeals of default termination issues brought under the Contracts Dispute Act. *Primepak Company,* 90–3 BCA 23,280 at 16,754, 1990 WL 125961 (G.S.B.C.A.1990).

■ The Fulford Doctrine applies to all cases where the contractor delays filing a reprocurement suit even where the parallel default termination case was dismissed with prejudice for failure to prosecute. *Primepak,* 90–3 BCA 23,280, at 116,755; *GSE Dynamics, Inc.,* 82–2 BCA 16,059, at 79,677. The doctrine has also been adopted by the Court of Federal Claims. *Russell Corp.,* 15 Cl.Ct. at 760; *D. Moody,* 5 Cl.Ct. at 70; *Z.A.N. Co. v. United States,* 6 Cl.Ct. 298, 302 (1984). The parties do not dispute that the issue of reprocurement costs is not currently before the IBCA. Therefore, the Court of Federal Claims will stay the proceedings pertaining to reprocurement costs pending a final IBCA decision on the default termination issue.

### 3. *Transferring the Counts*

■ Under the Contract Disputes Act of 1978, 41 U.S.C. § 601, *et seq.,* the Court of Federal Claims has jurisdiction to transfer the suit. Section 10(d) of the Act states:

If two or more suits arising from one contract are filed in the [United States Court of Federal Claims] and one or more agency boards, for the convenience of parties or witnesses or in the interest of justice, the [United States Court of Federal Claims] may order the consolidation of such suits in that court or transfer any suits to or among the agency boards involved. 41 U.S.C. § 609(d) (1988).

The Court of Federal Claims may either consolidate suits within the court or transfer suits to the appropriate agency board. The decision to consolidate or transfer suits is within the court's discretion. *Giuliani Contracting Co. v. United States*, 21 Cl.Ct. 81, 82 (*citing Warwick Constr., Inc. v. United States*, 650 F.2d 289, 225 Ct.Cl. 567 (1980)); *see also American Lifestyle Homes, Inc. v. United States*, 17 Cl.Ct. 711, 715–716 (1989).

■ Before transferring a case, a court must weigh three factors: convenience of the parties; convenience of the witnesses; and, the interests of justice. *Giuliani Contracting Co., Inc. v. United States*, 21 Cl.Ct. at 83 (citing 41 U.S.C. § 609(d)). In determining whether justice or convenience favors transfer, the court should consider: (1) whether the disputes before the Board and the court concern the same contract; (2) whether the claims before the court and Board duplicate claims or involve overlapping and related issues; (3) whether plaintiff initially chose to appeal its claims before a court or a Board; (4) whether one forum or the other has already made significant progress on the claim; (5) whether concurrent resolution would result in an inefficient allocation of court, Board, and party resources; and, (6) whether separate fora could reach inconsistent results when interpreting the same contract. *Id.* at 83.

■ Plaintiff's claim satisfies the first and second factors cited above because the same contract is in question. Furthermore, if the claims were heard in both fora, the court and the IBCA would be duplicating their efforts and deciding overlapping and related issues. Third, plaintiff initially chose to file an appeal with the IBCA, and not with the Court of Federal Claims; therefore, the case should be heard in the initial forum.

Also, the IBCA has made the most progress on the claim because it has previously considered many of the issues, and, for reasons of judicial and administrative efficiency, would be able to more readily rule on the issues. In applying the fifth factor to the circumstances before us, concurrent resolution would result in inefficient allocation of the court's and IBCA's resources because both would be hearing the same evidence and deciding on the same issues. Conflicting results would create more confusion and inefficiency which would, in turn, violate the principles established by the Election Doctrine. Finally, if the issues were heard in both fora, inconsistent rulings could result. Therefore, plaintiff's request to transfer the counts to the IBCA upholds the interests of justice and convenience.

### D. *The Monetary Claim*

■ Finally, even though plaintiff presented the claim to the CO, defendant argues that the court lacks jurisdiction to entertain plaintiff's monetary claim of 8.8 million in damages because a final decision was never made. Under the Contract Disputes Act, all claims by a contractor against the government, relating to a contract, shall be in writing and shall be submitted to the CO for a decision. 41 U.S.C. § 605(a). In turn, where no claim has been submitted to the CO for a final decision, no decision is possible and no jurisdictional basis exists. Defendant emphasizes that plaintiff omitted to allege that it submitted a written claim meeting these requirements.

■ Plaintiff maintains that the court need not rule on the government's argument at this time because of the reinstatement of the IBCA appeal. Alternatively, plaintiff argues that no claim was required to be submitted and certified because the settlement agreement plaintiff is seeking to enforce is not a "claim" within the meaning of 41 U.S.C. § 605(a), the Federal Acquisition Regulations, and the contract. In this instance, plaintiff stresses that it seeks to enforce a negotiated settlement agreement, and that the present action is not a claim subject to certification. Finally, Marshall argues that it properly presented its demand for recovery

in the settlement proposal. Nonetheless, plaintiff's original monetary claim should be addressed by the IBCA because it is included within the merits of the case and because the IBCA granted plaintiff's motion for reconsideration.

*Conclusion*

The motion to dismiss is denied because defendant has not met its burden of proof and plaintiff has made a *prima facie* showing of jurisdictional facts. Counts I, II, and III shall be transferred to the IBCA. This court cannot exercise jurisdiction over the issue of default termination because plaintiff made a binding forum election by filing the complaint with the IBCA. Furthermore, the monetary claim cannot be tried before this court because it is included within the merits of the case to be presented before the IBCA. Count IV, the assessment of reprocurement costs, will be stayed pending a final decision by the IBCA. There being no just reason for delay, the Clerk is hereby ordered to enter judgment pursuant to RCFC 54(b) transferring Counts I, II, and III to the IBCA.